E-FILED
Monday, 20 April, 2020  01:13:08 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 3:20-mj-03044 |
| RANDALL BURRUS, | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO DETENTION

Defendant RANDALL BURRUS, through his attorney Assistant Federal Public Defender Johanes Maliza, pursuant to Bail Reform Act, 18 U.S.C. § 3142 *et seq.* (the "BRA"), specifically 18 U.S.C. § 3142(f)(2), respectfully submits this memorandum of law in opposition to the pretrial detention of Mr. Burrus.

This case is a straightforward gun possession case, involving no violence or threat of violence from the defendant.  Nor is there any risk of flight from the defendant.  Especially in light of the fact that there is no presumption of detention, this Court can create conditions of release that assure that Mr. Burrus will not present a

danger to the community, and assure that Mr. Burrus will return to this Court for all scheduled appearances.

## I. Facts

### A. Regarding Serious Risk of Flight Under § 3142(f)(2)(A)

If called to testify, Mr. Burrus' wife would testify as follows. Mr. Burrus has been married to his current wife for 27 years, and he is welcome in their home if released on bond.  She is employed full time and will be able to financially provide for Mr. Burrus while out on bond.  They live with their minor son, and he and Mr. Burrus have a good relationship.  Ms. Burrus is not worried at all about Mr. Burrus returning to their home.   She states that since Mr. Burrus stopped drinking, there have been no incidents similar to those that occurred in 2003.

The defense further proffers as follows: Mr. Burrus has deep ties to the community.  He has lived in Assumption, Illinois, since about 2000.  He has lived at the same address all that time.  His grandfather and aunts and uncles still live in the area.  In addition to his wife and minor child, his two adult children also live in Central Illinois.  Mr. Burrus has a good relationship with them.

Though Mr. Burrus is not necessarily capable of work right now, Mr. Burrus has long worked in construction in Central Illinois. He is a union member at Engineers Local 965, based in Springfield, Illinois.  He is an active member of the union.

Upon his arrest, Mr. Burrus did not flee or resist law enforcement in any way.  The FBI was able to search Mr. Burrus' house without any need for the swat team that they sent to Mr. Burrus' house.  Instead, they knocked on the door, and were let in by Mrs. Burrus.

As noted in the Pretrial Services Report ("PTSR"), Mr. Burrus has medical needs.  He regularly sees doctors in the area following a major health event last year, Dkt. No. 8 at 3.  Even with those medical appointments, Mr. Burrus' afflictions do not allow him to "flee" in any real sense of the word.  He also takes several medications, as noted in the PTSR.

### B. Regarding Serious Risk of Obstruction, or Threatening, Injuring, or Intimidating Witnesses or Jurors under § 3142(f)(2)(B)

Mr. Burrus proffers the following information:

Upon his arrest, Mr. Burrus gave law enforcement a full statement regarding the firearms and ammunition found in his

home.  Further, the incendiary language online was his son, according to the government.  Dkt. 1 at 11.  The son took responsibility *without* talking to Mr. Burrus before the interview. The FBI had already taken Mr. Burrus into custody.

There is no allegation that Mr. Burrus has ever threatened anybody directly.  There is no allegation that Mr. Burrus has ever participated in any violent acts related to the online materials referenced in the complaint.   Mrs. Burrus states that any problems Mr. Burrus ever had with the law, were directly related to alcohol.

As noted in the PTSR, Mr. Burrus successfully sought treatment for alcohol abuse.

## II. Applicable Law

Since Mr. Burrus' case falls under 18 U.S.C. § 3142(f)(2), there is no presumption of detention.  Moreover, under § 3142(f)(2), the only two permissible bases for detention are finding that he presents:

> (f)(2)(A)  a serious risk that such person will flee;
>                or
>
> (f)(2)(B)  a serious risk that such person will
>                obstruct or attempt to obstruct justice,
>                or threaten, injure, or intimidate, or
>                attempt    to    threaten,    injure,    or

> intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f)(2)(A-B).   A finding of dangerousness is only relevant to which conditions should be imposed upon release.[1]   The plain language of the text demonstrates that the Court must find that the case involves a "serious" risk of obstruction or of flight.  Absent such a finding, the threshold provisions for detention under § 3142(f)(2) have not been met.

### A. The BRA is the Exclusive Authority for Pretrial Detention

Title 18 U.S.C. § 3142(f) "authorize[s] detention only upon proof of likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute."  *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986).

The Seventh Circuit discussed the issue in *United States v. Lane*, 252 F.3d 905, 908 (7th Cir. 2001).  The Bail Reform Act, "with limited exceptions, does not permit a defendant to be detained

---

[1] Counsel is aware, from prior hearings, that the Court may read the statute differently with regard to whether or not a finding of danger to the community, alone, is enough to detain an individual under § 3142(f)(2).  Counsel thus makes this argument for purposes of preserving the argument, if necessary.

pending trial unless he is a flight risk or is being prosecuted for a crime of violence. §§ 3142(f)(1), (2)." *See also Morgan*, 2014 WL 3375028; *United States v. Parahams*, No. 3:13-CR-005 JD, 2013 WL 683494, *2 (N.D. Ill. Feb. 25, 2013); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 965 (E.D. Wis. 2008).

### B. Dangerousness, Alone, is Not A Basis for Detention Under 18 U.S.C. § 3142(f)(2)

In addition to the BRA being the exclusive mechanism for pretrial detention:

> where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1) . . . Insofar as in the present case there is no longer any contention that any of the subsection (f)(1) conditions were met, pre-trial detention solely on the ground of dangerousness to another person or to the community is not authorized.

*United States v. Ploof*, 851 F.2d 7, 11-12 (1st Cir. 1988); *see also United States v. Dillard*, 214 F.3d 88, 91 (2d Cir. 2000). Other Courts have also held that dangerousness is not a basis for detention under 18 U.S.C. § 3142(f)(2). *See, e.g., United States v. Twine*, 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999); *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United*

*States v. Friedman*, 837 F.2d 48 (2d Cir. 1988); *Himler*, 797 F.2d at 160.

That means that, if the Government seeks detention, but the case does not fall under 18 U.S.C. § 3142(f)(1), the Court may only detain a defendant it finds to be a "serious" risk of flight, or to present a "serious" risk of obstruction or intimidation of witnesses.

As to the relevance of dangerousness to the court's consideration, according to Magistrate Judge Hawley,

> [W]here none of the factors set forth in § 3142(f)(1) are present . . . 'dangerousness' is only relevant for purposes of choosing which, if any, conditions accompanying an order of release are necessary to ensure the appearance of the defendant or the safety of the community.

*United States v. Morgan*, 2014 WL 3375028, *2 (C.D. Ill. 2014).

## III.    Analysis

This is a simple gun case, dressed up as something else, but currently looking like a guy getting prosecuted for having unpopular politics.  Mr. Burrus has avoided legal trouble for nearly two decades.  As his wife stated, his problems in the early 2000s were related to alcohol, not a malevolent nature.  And Mr. Burrus successfully addressed issues with alcohol.  Dkt. No. 8 at 3.

To put his lack of criminality into perspective, if convicted, Mr. Burrus will be in CHC I, on zero criminal history points. The last time he missed a court date was 2003. This is a local man with a history of work, family, and staying out of trouble.

Mr. Burrus asks this Court to take judicial notice of another 922(g) defendant it let out on bond: Gregory Griffin, Case No. 17-20047. Mr. Griffin had a within-10 years domestic conviction, as well as a controlled substance trafficking offense. The Court let him out on bond, and he came to every court appearance after nearly 12 months awaiting resolution.

Mr. Burrus is older, with a less serious record than Mr. Griffin.

### A. Mr. Burrus' Alleged Political Views Are Immaterial to Detention

There is no bond-relevant reason that the government's motion discussed an off-color joke and Mr. Burrus' alleged dissatisfaction with U.S. foreign policy. *See* Dkt. No. 9 at 6-7. If not for the context of a criminal case, they could be describing the views and manner of speaking of large swaths of the United States population.

Moreover, his son's political beliefs and statements are also immaterial. *See* Dkt. No. 1 at 11 (Agent Benton swearing that the

little boy claimed responsibility for the online language).
Apparently, the boy was writing vulgar language online and using
dad's e-mail.  He is 10.

Unfortunately, 10 year-old boys are often irresponsible, cruel,
and vulgar.  They are also often drawn to violence, and wont to say
racist, misogynistic, or otherwise ignorant things.  The boy may
need to be grounded for a whole month, but it still has nothing to
do with Mr. Burrus' detention.

In the Complaint, Dkt. No. 1, the government tried to tie Mr.
Burrus to a Molotov cocktail in Massachuetts this month.  There is
no evidence to support the link, though.  The closet "link" the
government presents, is "a male DNA profile."  Dkt. No. 1 at 8.  That
narrows it down to just below 3.9 billion people.  Other than that,
the government seems to have leapt from a child's ignorant
language online, to an *actual* terrorist's actions over 1000 miles
away.  And yet nothing ties Mr. Burrus to either of those end
points.

In sum, the Complaint in this case and the motion for
detention describe a person who could not own a gun, who had a
.22 rifle and a .40 handgun.  Dkt. No. 9 at 6-8.  That person has

9

political views, some of which are common in 2020, and none of which are illegal.   He also has a 10 year-old boy who does not use the family's internet connection responsibly.

### B. Mr. Burrus is Not a Serious Risk of Flight

Mr. Burrus is not a flight risk, much less a serious risk.  His wife and three children are all in the district.    The youngest of those children is in his home. As of the Governor's order this weekend, the 10 year-old has nobody to watch him while Mrs. Burrus is at work.

Mr. Burrus has nowhere to go.  He has one brother with whom he regularly speaks in Tennessee.  But other than that, his kids, his wife, and extended family are here.  He would not leave all of them to be on the run.

Mr. Burrus has been in the same house in Assumption for 20 years.  Dkt. 8 at 1.  Most of that time he was working, and the only reason he stopped is because of his health troubles.   *See* Dkt. 8 at 3.  Those same health issues further underline that he has nowhere to go.  The reality is that a sick person is not up for a flight from law enforcement.

### 1. Any Risk of Flight Can be Mitigated by Conditions

Mr. Burrus is no flight risk. But if there is any risk, this Court could impose simple conditions that would mitigate the risk. The Court could impose a higher-than-$10,000 recognizance bond, since he does appear to have some financial interets. The Court could also put Mr. Burrus on electronic home monitoring, with regular check-ins at the probation office. These simple conditions would (a) disincentive any flight, and (b) ensure that no flight could take place without the Court knowing.

### C. Mr. Burrus is Not a Risk of Obstructing Justice, or Intimidating Witnesses

There is absolutely no suggestion that Mr. Burrus has obstructed, tried to obstruct, or would obstruct justice. Similarly, there is no suggestion that he would intimidate or threaten any witness or juror.

As a preliminary matter, if the Complaint is accurate, the government only needs two witnesses for a conviction. First, will be an FBI agent to authenticate Mr. Burrus' post-arrest statement. Second, would be an ATF agent to testify that there are no gunmakers in Illinois. Assuming the Complaint is accurate, then,

there is little risk of Mr. Burrus intimidating the witnesses that the government might call to prove its case.  And as for intimidating any jurors, there is no information suggesting that Mr. Burrus has ever done anything like that.

He presents no risk of obstructing justice or intimidating witnesses.

### 2. Conditions Can Mitigate Any Risk of Obstruction

To the extent there is any risk of obstruction or intimidation, the Court could mitigate those risks with conditions.  Limiting Mr. Burrus' access to phones and internet would be a sensible provision.  This could be accomplished by asking his wife to enact "lock" codes on the computers and phones, which she would not give to Mr. Burrus.  Mrs. Burrus has already warranted that she volunteers to be a Third Party custodian.  She has no interest in getting into trouble, herself, so there can be confidence that she will not violate any terms like that.

### D. There is No Danger to the Community

As noted above, Mr. Burrus' position is that, on a § 3142(f)(2) case, dangerousness is not relevant to the question of whther or not the Court detains Mr. Burrus pre-trial.  Rather, he believes danger

should only be considered for purposes of deciding which conditions to impose on bond.

But even if danger were a consideration for detention, Mr. Burrus presents little-to-no danger to the community.  His son's behavior does not suggest that Mr. Burrus is dangerous.  It suggests that the 10 year-old has bad judgment.  And the events in Massachusetts are, literally, 1000 miles away from Mr. Burrus.  The government does not even suggest that he had something to do with it.

The government's focus on Mr. Burrus' political views suggests it believes his thoughts or words are dangerous.  Ironically, the government treating a citizen's words as "dangerous" would be more alarming than anything Mr. Burrus is accused of doing.  But Mr. Burrus' alleged politics are neither material, nor suggestive that Mr. Burrus, himself, presents a danger.

### 1. Conditions Can Be Imposed to Mitigate Any Danger

If the Court is concerned about Mr. Burrus, there are conditions that could mitigate any danger.  First, the Court could require drug and alcohol testing.  As noted above, the problems Mr. Burrus had back in 2003 were related to alcohol.  Controlling that

would control the only thing that ever got Mr. Burrus in trouble.
Second, the Court could limit Mr. Burrus' internet and phone
access. As noted regarding any risk of obstruction, these could be
accomplished with a simple pass code on any devices in the home.
Third, the Court could impose a home detention requirement, too.
That would ensure that Mr. Burrus could not acquire any gun or
anything else illegal.

## IV.      Conclusion

WHEREFORE, Mr. Burrus should be released on bond, pending
resolution of his case.

                          Respectfully Submitted,

April 20, 2020            RANDALL BURRUS,
                          Defendant

                          THOMAS PATTON,
                          Federal Public Defender

                          s/Johanes Maliza
                          Johanes Maliza (6323056)
                          Office of the Federal Public Defender
                          600 E. Adams St., Third Fl.
                          Springfield, IL 62701
                          Telephone:    217-492-5070
                          Facsimile:    217-492-5077
                          E-Mail:    johanes_maliza@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Johanes C. Maliza